UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Bobby Albert Goodson | Case No. 4:05-cr-00079-1-TLW<br><br>**ORDER** |

This matter comes before the Court on Defendant Bobby Albert Goodson's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 248. For the reasons below, his motion is denied.

## PROCEDURAL BACKGROUND

On January 27, 2005, Goodson and four codefendants were named in an eleven-count Indictment arising out of five armed robberies. ECF No. 71. These five robberies took place in Florence, South Carolina, from late 2003 to early 2004. ECF No. 1. Notably, Goodson was named each of the Indictment's eleven counts. *Id.*

On August 29, 2005, pursuant to a written plea agreement, Goodson pled guilty to Count 7 (Hobbs Act robbery affecting commerce in violation of 18 U.S.C. § 1951(a)) and Counts 8 and 10 (use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)). ECF No. 104. As noted in his Presentence Investigation Report ("PSR"), Goodson faced a Guidelines imprisonment range of 46 to 57 months for Hobbs Act robbery (Count 7), a statutory mandatory minimum of 84 months on his first § 924(c) conviction (Count 8), and a statutory mandatory minimum of 300 months on his second § 924(c) conviction, all terms to run consecutive to each other. PSR ¶¶ 61–62, 80–81. Prior to sentencing, the

Government moved for a downward departure, which the Court granted. ECF Nos. 128 & 130. Ultimately, Goodson was sentenced to a total of 293 months imprisonment consisting of 57 months for Hobbs Act Robbery (Count 7), 84 months on his first § 924(c) conviction (Count 8), and 152 months on his second § 924(c) conviction (Count 10). ECF No. 137. Goodson appealed his sentence, which was affirmed by the United States Court of Appeals for the Fourth Circuit. ECF Nos. 156, 159 & 185.

Goodson filed the present motion for compassionate release on April 11, 2022. ECF No. 248. The Government opposes Goodson's motion. ECF No. 252. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step

Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Goodson's motion and the Court's decision, the Court will first review the offense conduct establishing Goodson's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

I. **THE OFFENSE CONDUCT**

This case involves five violent armed robberies committed by Goodson and four codefendants in and around Florence, South Carolina. The common denominator as to each of these robberies was the participation of Goodson.

The first robbery occurred on November 26, 2003, when Goodson and a codefendant robbed the Kwik-Fill #18 convenience store in Florence, South Carolina. PSR ¶ 16. The two rushed into the store, wearing black ski masks and wielding a black pistol. *Id.* Once inside, one of the robbers proceeded to hold the store clerk down on the ground with his foot on top of the clerk. *Id.* While doing so, the robber struck the store clerk in the back of the head with the pistol five or six times. *Id.* The robber then forced the clerk to open the cash register, before demanding he open the store's safe. *Id.* When the clerk told the robber he was unable to open the safe, he was again struck in the head with the pistol. *Id.* Goodson and his codefendant then fled store with the money from the register along with an unknown number of cigarettes. *Id.*

The second robbery occurred several hours later, when Goodson and a codefendant robbed the Hess Mart located in Florence, South Carolina. *Id.* ¶ 17. According to the store clerk, the two robbers—now both armed with pistols—came into the store shouting at the clerk to get on the ground. *Id.* The clerk complied, laid on the floor, and, like the clerk in the first robbery, was struck in the head several times with a pistol. *Id.* After assaulting the clerk, the two robbers forced him to open the register, taking approximately $130.00 before fleeing. *Id.*

The third robbery occurred on December 2, 2003, when Goodson and a codefendant robbed the Food Chief convenience store in Florence, South Carolina. *Id.* ¶ 18. The two entered the store armed with handguns and ordered the clerk to get on the ground. *Id.* After she got on the ground, one of the robbers began counting down as though he was going to shoot the clerk. *Id.* The clerk was ordered to open the safe, which she told the robbers she was unable to do. *Id.* The two robbers then forced her to open the cash register. *Id.* Once they pilfered the register, Goodson and his codefendant fled the store with $86.00 in hand, along with $100.00 worth of cigarettes. *Id.*

The fourth robbery occurred on January 21, 2004, when Goodson and two co-defendants robbed the Handy Shop in Darlington, South Carolina. *Id.* ¶ 19. According to the clerk, the three robbers entered the store armed with handguns and wearing dark clothing, ski masks, and gloves. *Id.* Once inside, one of the robbers walked behind the counter, pointed his gun at the clerk's face, and demanded money. *Id.* The clerk opened the register, and the robbers stole approximately $3,500.00 as well as the clerk's wallet. *Id.* Next, one of the robbers grabbed the clerk by his hair, pointed his gun at the clerk, and demanded that he take them to the store's safe. *Id.* After the clerk led them to the safe, two of the robbers picked it up and walked it out of the store. *Id.* At the same time, a second victim was standing outside of the store. *Id.* When the robbers passed her, one of them pointed a gun at her and forced her into the store and onto the ground. *Id.* They demanded she hand over her money and, when informed she had none, left

her alone and fled the scene. *Id.*

The fifth robbery occurred on February 10, 2004, when Goodson and a codefendant robbed the Markette Convenience Store in Florence, South Carolina. *Id.* ¶ 20. The store clerk later told police that two armed robbers entered the store wearing black ski masks and gloves. *Id.* One of the robbers went behind the counter and took money from the register. *Id.* During the robbery, a customer approached the counter to purchase two beers. *Id.* The robbers approached her from behind, placed a pistol to the back of her head, and demanded she get on the ground and turn over her wallet. *Id.* Ultimately, the robbers stole $9.00 from her, the money from register, and a single 24-ounce can of Bud Light beer before fleeing. *Id.*

The Court finds it necessary to discuss a sixth robbery, which is outlined in the PSR's "Relevant Conduct" section. *Id.* ¶¶ 22–24. This robbery occurred on November 29, 2003, when Goodson and a codefendant robbed the Markette Convenience Store in Florence, South Carolina (which Goodson would later rob again during the fifth robbery). *Id.* ¶ 22. According to the store clerk, the two entered wearing ski masks and holding handguns. *Id.* The first robber commanded everyone to get on the ground while the second attempted to open the register. *Id.* Unable to do so, he ordered the store clerk to open the register, which he did. *Id.* The second robber stole an unknown amount of cash before ordering the clerk to go to the store's office and open the safe. *Id.* The clerk told the robber he was unable to do so and was ordered to get back on the ground. *Id.*

During this robbery, one of the two robbers approached a customer who was

lying on the floor and placed a gun on the back of his head. *Id.* The robber kicked a glass bottle of beer sitting next to the customer, causing it to strike the customer in the head. *Id.* He then stole the customer's wallet, which contained $142.00 in cash. *Id.* Goodson and his codefendant then fled the scene of the robbery. *Id.*

As noted, Goodson pled guilty to Counts 7, 8, and 10 of the indictment. Count 7 and 8 relate to the fourth robbery of the Handy Shop. ECF No. 1. Count 10 relates to Goodson's brandishing of a pistol when he robbed the Markette Convenience Store during the fifth robbery. *Id.* In exchange for his plea, the Government declined to seek a more significant sentence by dismissing several counts of the Indictment, specifically: Count 1 (Hobbs Act Robbery), Count 2 (§ 924(c) violation), Count 3 (Hobbs Act Robbery), Count 4 (§ 924(c) violation), Count 5 (Hobbs Act Robbery), Count 6 (§ 924(c) violation), Count 9 (Hobbs Act Robbery), and Count 11 (felon in possession). ECF No. 101.

## II. THE PARTIES' ARGUMENTS

Before addressing the merits of Goodson's motion for compassionate release, the Court will first review the arguments raised by both Goodson and the Government. *See* ECF Nos. 248 & 252.

### A. *Goodson's Arguments in Support of His Motion*

Goodson requests that the Court grant his motion and reduce his sentence to time served "because his claims based on his 'stacked' sentences for violations of 18 U.S.C. § 924(c) rise to the level of 'extraordinary and compelling' under § 3582(c)(1)(A)(i) and *United States v. Mccoy*." ECF No. 248 at 1. Further, Goodson

asserts that "a combination of the [§ 3553(a)] factors . . . warrant relief." *Id.* Specifically, Goodson points to his "young age at the time he committed the instant offense," the "disparity of similar crimes after the [First Step Act], and his rehabilitation efforts." *Id.* Finally, Goodson contends that "he is not a threat or danger to the community [.]" *Id.*

### B.    *The Government's Opposition*

The Government opposes Goodson's motion on two independent grounds. ECF No. 252. First, the Government asserts that "the changes to the § 924(c) stacking penalties alone do not entitle Goodson to relief under § 3582(1)(A)(i)." ECF No. 252 at 5. Second, and alternatively, the Government argues that even if Goodson's stacked convictions constitutes an "extraordinary and compelling reason," the § 3553(a) factors weigh against his compassionate release. *Id.* at 10.

### III.    THE COURT'S REVIEW

The Court will first evaluate whether Goodson has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before considering whether the § 3553(a) factors weigh in favor of his release.[1]

### A.    *The "Extraordinary and Compelling Reasons" Standard*

The sole argument raised in Goodson's motion asserts that he is entitled to compassionate release because of his "stacked" 924(c) convictions. When Goodson was sentenced in 2006, federal prosecutors could seek to "stack" multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be

---

[1] The Government does not contest that Goodson has exhausted his administrative remedies. Accordingly, the Court will evaluate Goodson's arguments in support of his motion on the merits.

charged at the same time. Thus, a defendant, like Goodson, who was charged with two counts of using a firearm in violations of § 924(c), could face a 84-month mandatory minimum as to the first violation and a 300 month mandatory minimum as to the second violation, said sentences to run consecutively, for a total of 384 months or 32 years.

Years after Goodson was sentenced, in the First Step Act of 2018, Congress modified § 924(c) such that the 25-year mandatory minimum penalty now applies to a "second or subsequent" § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *McCoy*, 981 F.3d at 285–86. The Fourth Circuit recently noted in *United States v. Brown* that "Congress did not make this change to § 924(c) retroactive [but concludes] § 3582(c)(1)(A) allow for 'individual relief' based on a § 924(c) sentencing disparity 'in the most grievous cases." ____F.4th____, 2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023).[2] The Court

---

[2] The Court has carefully reviewed the Fourth Circuit's recent published opinion in *United States v. Brown*, ____F.4th____, 2023 WL 5257673 at *1 (4th Cir. Aug. 16, 2023). In that case, the defendant, Kelvin Brown, was charged with eight drug and firearm charges, including two counts of possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). *Id.* Brown went to trial, and a jury convicted him on seven of eight counts—including the two § 924(c) charges. *Id.* Brown received a total sentence of approximately 57 years, 30 of which were for his two "stacked" § 924(c) convictions. *Id.* In 2020, Brown moved for compassionate release arguing, in part, that the First Step Act's changes to the "stacking" of § 924(c) convictions constituted an "extraordinary and compelling reason" in favor of relief because of the disparity in the sentence he received and the one he would receive today. *Id.* at * 2. The district court denied the motion, concluding that Brown could not establish "extraordinary and compelling reasons" and because the 18 U.S.C. § 3553(a) sentencing factors weighed against granting Brown relief. *Id.* On appeal, the Fourth Circuit reversed the district court, vacated its order, and remanded the case with instructions to reduce Brown's sentence by 20 years. *Id.* In doing so, the Fourth Circuit majority concluded that, because of the First Step Act's

will consider Goodson's request for relief as the Fourth Circuit provided in *McCoy* and *Brown*.

Turning to Goodson's argument that these changes constitute an "extraordinary and compelling reason" for a reduction in his sentence, the Court acknowledges the First Step Act's prospective elimination of the "stacking" of sentences under to § 924(c). As a result, if Goodson pled to the same two charges today, he would be subject to a lower mandatory minimum sentence on the second § 924(c) count and a lower overall sentencing range. As noted, Congress did not make the First Step Act's § 924(c) change retroactive.[3] *See* § 403(b), 132 Stat. at 5222 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*.") (emphasis added). Although the First Step Act's change to § 924(c) sentences "can constitute an extraordinary and compelling reason for relief," the Fourth Circuit recognized that "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 285, 287 (emphasis added). Deciding whether a particular defendant's sentence should be reduced is ultimately an individualized, case-by-case inquiry. *See id.* at 287–88. In light of *McCoy* and *Brown*, the Court concludes

---

changes to § 924(c), the disparity between the sentence Brown received and the one he would receive today constituted an "extraordinary and compelling reasons." *Id.* After concluding that Brown established "extraordinary and compelling reasons," the *Brown* majority proceeded to independently reweigh the § 3553(a) sentencing factors, finding that they supported a reduction in Brown's sentence. *Id.* Specifically, the majority noted that Brown had made rehabilitative efforts, received only one disciplinary infraction, and was serving a sentence based on *nonviolent* conduct. *Id.*

[3] Nevertheless, the Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

Goodson's position is "relevant to . . . the 'extraordinary and compelling reasons' inquiry [.]" *Brown*, 2023 WL 5257673 at *7. However, the question of a sentence reduction here is based—and focused on—a review of the criminal conduct committed, Goodson's criminal history, relevant § 3582(c) issues raised in the briefing, applicable caselaw, the 18 U.S.C. § 3553(a) sentencing factors, and changes in the law.[4]

### The Court's review of the § 3553(a) factors

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that, based on both Goodson's repeated violent conduct and his significant criminal history, the § 3553(a) factors weigh against granting his request for relief.[5]

---

[4] The Court has also considered Goodson's claims of rehabilitation and notes that he has taken advantage of the educational and self-improvement programs offered by the Bureau of Prisons, yet "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" in considering a sentence reduction under § 3582. 28 U.S.C. § 994(t).

[5] The Court has balanced those factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

As part of the § 3553(a) factors, the Court reiterates the facts surrounding Goodson's extreme offense conduct. During his 2003–04 crime spree, Goodson's violent actions actively disregarded both the safety of his victims and the public. His conduct was significant and violent. Indeed, it involved Goodson and his codefendants pointing at—and *striking*—several victims with their firearms. In his motion, Goodson states that "[n]obody was seriously injured during" the robberies that he pled to, *i.e.,* the fourth and fifth robberies. ECF No. 248 at 7. The Court finds that this argument is unsupported and, in fact, contradicted by the record. As noted in paragraph 33 of the PSR, one of the victims of the fourth robbery submitted a victim impact statement, which outlined the effect of the robbery on her mental health, leading to an increased consumption of alcohol and feelings of fear. PSR ¶ 33.

Furthermore, Goodson's assertion that no one was injured in the robberies involving the counts he pled to explicitly ignores his violent and threatening conduct during the other three robberies. As noted, during the first and second robberies, store clerks were repeatedly struck in the head with pistols. In the third robbery, a pistol was placed to the back of the clerk's head while the robbers counted down—insinuating that they would kill her. Clearly, the robbery victims were placed in great fear of their personal safety and fear of being harmed by Goodson and the others involved in the robberies. Thus, after a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh heavily against a reduction in Goodson's sentence. *Contra Brown*,

2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Goodson clearly committed violent crime and threatened victims in each of the armed robberies with physical injury. When considering this incredibly violent conduct, it becomes apparent that the lengthy sentence Goodson received is amply justified.

As to "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the Court acknowledges that Goodson was 25 years old at the time of the robberies. Yet, by the time he was indicted for the instant federal offenses, he had already been convicted of a serious criminal offense—another strong-armed robbery. When he was 24, Goodson robbed the Holiday Inn Express in Florence, South Carolina, while armed with a pistol. PSR ¶ 41. During this robbery, he demanded a hotel employee open the register, lie on the ground, and place a pillow over her head. *Id.* He then stole $530.00 before fleeing. *Id.* For this offense, a South Carolina state court sentenced him to 6 years suspended to 2 years' probation. *Id.* Less than 6 months after receiving his probation sentence—and undeterred by its impact—he committed the five charged armed robberies and the sixth uncharged armed robbery. Notably, Goodson's state probation was then revoked in early 2004 for nine separate probation violations. *Id.* He was sentenced to 6 years a result of the revocation. *Id.* Goodson's failure to abide by the terms of his probation and his willingness to commit six further violent armed robberies while on state probation shows a distinct lack of respect for the law.

Based on this violent history, the Court finds that the sentence imposed was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. The Court concludes that, if released, Goodson would pose a risk to the safety of others based on his violent criminal history.

The Court also concludes that §§ 3553(a)(2)(A)–(C) weigh against release for similar reasons. As thoroughly discussed above, Goodson's conduct was egregious and violent. The sentence imposed was—and is—necessary to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. In *McCoy*, the district court concluded that the defendant's stacked § 924(c) sentences "far exceeded that necessary to achieve the ends of justice." 981 F.3d at 278. Here, by contrast, the Court concludes that Goodson's current sentence is sufficient, but not greater than necessary, to satisfy the factors in § 3553(a)(2).

The Court next turns to §§ 3553(a)(3)–(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. As noted, the First Step Act's elimination of § 924(c) "stacking" would subject Goodson to a lower mandatory minimum and if he were convicted of the same § 924(c) offenses today. The Court, however, does not believe that a sentence of time served, as requested by Goodson, is appropriate.

First, the Court gives great weight to the parties' plea negotiations and resulting plea agreement. Here, Goodson was charged with robbing five convenience

stores, armed with a weapon. The Government sought a long sentence against him based on his crimes. To accomplish this the Government entered a plea agreement with Goodson. In exchange for Goodson's plea, the Government agreed to drop eight of the eleven counts charging serious offenses, pursuant to a written plea agreement. ECF No. 101.

The Government had the option to seek convictions on each of the following dismissed counts, which would have resulted in a much higher sentence: Count 1 (Hobbs Act Robbery), Count 2 (§ 924(c) violation), Count 3 (Hobbs Act Robbery), Count 4 (§ 924(c) violation), Count 5 (Hobbs Act Robbery), Count 6 (§ 924(c) violation), Count 9 (Hobbs Act Robbery), and Count 11 (felon in possession). ECF No. 101. However, the Government made a plea offer to the defendant as outlined. At that time, some 18 years ago, after entering the plea agreement, the Government was fully aware of the sentencing options when defendants, like Goodson, were charged with multiple § 924(c) counts. Under this framework, the Government made an agreement in which Goodson pled to Counts 7, 8, and 10 so that Goodson would serve a substantial sentence for his crimes. Again, *eight* serious charges were dismissed. *See United States v. Ford*, No. CR 0:14-362-JFA, 2021 WL 4555730, at *10 (D.S.C. Oct. 5, 2021) (noting that the plea-bargaining process "may well be the reason that Congress expressly stated that the anti-stacking provision of the First Step Act was not retroactive. A retroactive application upsets settled bargains from years ago that were made in good faith."). Accordingly, Goodson pled guilty to three of the counts in the Indictment, including two counts of brandishing a firearm

during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing those two counts carried a statutory minimum sentence of 32 years (7-year statutory minimum on Count 2, with 25 years consecutive on Count 4). He was also aware that, in return, eight serious charges were dismissed, and he would receive the opportunity to assist the Government who, in return, would request a downward departure.

Second, while Goodson would face a lower starting mandatory minimum on his second § 924(c), if sentenced today, he could still receive the 293-month sentence originally imposed. Today, on both § 924(c) convictions, he would face a mandatory *minimum* of 84 months consecutive, before the Government's request for a downward departure. But this is only the mandatory statutory *minimum*. Goodson could be sentenced up to a statutory *maximum* of Life on either § 924(c) conviction. Again, if sentenced today, Goodson could still receive the original 293-month sentence imposed on his two § 924(c) counts, despite facing a lower statutory minimum on his second § 924(c) conviction.

Here, the sentence impose was the result of the parties' plea agreement. Indeed, in accordance with the terms of the agreement, the Government filed a motion for downward departure based on Goodson's cooperation, which ultimately reduced the time he was facing on his second § 924(c) count from 300 months to 152 months. Again, the Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c). As a result, if Goodson pled to the same two § 924(c) counts today, he would be subject to a lower mandatory minimum

sentence on his second § 924(c) count. However, this alone is not a basis to reduce his sentence. Considering Goodson's prior record and the continued violence in connection with the federal offenses, a 14-year minimum sentence on the same two § 924(c) counts today would be inadequate. Thus, when considering the instant offense conduct and Goodson's previously noted prior violent armed robbery, there is a limited basis to conclude that a lesser or significantly lower sentence would be imposed today. As a result, the Court declines, for the reasons stated, to disturb the results of the parties' carefully crafted plea agreement. Accordingly, the Court concludes that §§ 3553(a)(3)-(6) do not weigh in favor of release.

Finally, as noted, in *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider individual factors specific to the defendant. 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. Goodson participated in a violent armed robbery spree where he and his co-defendant brandished firearms, threatened to harm and kill several victims, and robbed those victims. This conduct was egregious, serious, and significant. It demonstrates Goodson's disregard for both the safety of others and the law. Moreover, the Court concludes that, if released, Goodson would pose a risk to the public's safety. In light of the above analysis, the Court again finds that the § 3553(a) factors weigh against Goodson's request for relief of a time served sentence. The Court concludes a sentence reduction is not

appropriate.

## CONCLUSION

The Court finds that Goodson's motion should be denied based on an analysis and balancing of the 3553(a) factors because, if released, he would pose a significant risk to the public. Accordingly, it is the judgment of the Court that Goodson's motion for compassionate release, ECF No. 248, is denied.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

September 11, 2023
Columbia, South Carolina